IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

LETARA V. McCAIN,                )
       Plaintiff,             )    Civil Action No. 4:14cv00035
v.                               )
                                 )
SOCIAL SECURITY                  )
ADMINISTRATION,                  )    By:    Joel C. Hoppe
       Defendant.             )    United States Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff LeTara V. McCain, proceeding *pro se*, asks this Court to review the Commissioner of Social Security's ("Commissioner") final decision denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–422. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). Having considered the administrative record, the parties' briefs, and the applicable law, I find that the Commissioner's final decision is not supported by substantial evidence. The decision should be reversed and the case remanded under the fourth sentence of 42 U.S.C. § 405(g).

### I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. *See* 42 U.S.C. § 405(g); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

1

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if "'conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled.'" *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Social Security ALJs follow a five-step process to determine whether an claimant is disabled. The ALJ asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See* 20 C.F.R. § 404.1520(a); *Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The claimant bears the burden of proof at steps one through four.

*Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

McCain filed for DIB on October 13, 2010. *See* Administrative Record ("R.") 131. She was 40 years old, *id.*, and had worked most recently as a waitress, R. 136. McCain alleged disability beginning July 10, 2008, because of a back injury, arthritis, carpal tunnel syndrome, depression, and anxiety. R. 135. After the state agency twice denied her application, R. 62–63, McCain appeared *pro se* at a hearing before an ALJ on February 22, 2012, R. 35–36. She and her mother testified about McCain's chronic musculoskeletal pain and the limitations it caused in her daily activities. R. 44–56. A vocational expert ("VE") also testified about the nature of McCain's past work. R. 59. The VE did not testify as to McCain's ability to work, however, because the ALJ found that the record did not contain enough information about McCain's functional limitations before her date last insured ("DLI").[1] *Id.*

The ALJ denied McCain's application in a written decision dated May 22, 2012. R. 20–27. He concluded at step two that McCain was not disabled between July 10 and December 31, 2008, because her degenerative disc disease ("DDD") and depression did not significantly limit her ability to perform basic work activities during that time. R. 22, 23–26. The Appeals Council declined to review that decision, R. 6, and this appeal followed.

## III. Discussion

McCain's filings, liberally construed, present two reasons "why the Commissioner's decision is not supported by substantial evidence or why the decision otherwise should be

---

[1] To be eligible for DIB, a claimant must prove that she was "disabled" on or before the date she was last insured for disability benefits. *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 340 (4th Cir. 2012) (citing 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. §§ 404.101(a), 404.131(a)). McCain's DLI is December 31, 2008. R. 121.

3

reversed or the case remanded." W.D. Va. Gen. R. 4(c)(1). First, McCain argues that substantial evidence does not support the ALJ's conclusion that her back disorder and depression were not severe impairments. *See* Pl. Br. 1–2, ECF No. 14. Second, McCain asks the Court to remand her case so the Commissioner can consider the additional medical records that McCain submitted with this appeal.[2] *See id.* at 2; Pl. Resp. 2, ECF No. 20.

A.      *Non-Severe Impairments*

At step two, the claimant must show that she has a "severe medically determinable physical or mental impairment . . . or combination of impairments." 20 C.F.R. § 404.1520(a)(4)(ii); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). This requires the ALJ to determine whether the claimant has at least one medically determinable "physical or mental impairment" and, if so, the degree to which the impairment or combination of impairments affects the claimant's ability to perform "basic work activities." SSR 96-3p, 1996 WL 374181, at *1–2 (July 2, 1996); 20 C.F.R. §§ 404.1520, 404.1523. A medically determinable impairment "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). "Basic work activities" are the "abilities and aptitudes necessary to do most jobs," such as walking, lifting, and dealing with normal workplace situations. 20 C.F.R. § 404.1521(b).

The ALJ at this step "will consider all evidence in [the] case record," 20 C.F.R. § 404.1520(a)(3), except evidence about the claimant's age, education, and work experience, *id.* § 404.1520(c). *See also id.* § 404.1529(c)(4). Determining that an impairment(s) is or "is not severe requires a careful evaluation of the medical findings that describe the impairment(s) . . . ,

---

[2] I find it unnecessary to consider whether McCain's additional evidence might authorize the Court to remand her case under the sixth sentence of 405 U.S.C. § 405(g). On remand under the fourth sentence of 42 U.S.C. § 405(g), the Commissioner will make new factual findings based on all the evidence in the record before her. *See* 20 C.F.R. § 404.983.

and an informed judgment about the [functional] limitations and restrictions the impairment(s) and related symptom(s) impose" on the claimant. SSR 96-3p, at *2. "Symptoms, such as pain, . . . will not be found to affect the [claimant's] ability to do basic work activities unless the [claimant] first establishes by objective medical evidence . . . that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptoms."[3] *Id.* If the claimant clears this threshold, the ALJ must consider "the intensity, persistence, and limiting effects of the alleged symptom(s) . . . along with the objective medical and other evidence in determining whether the impairment or combination of impairments is severe." *Id.*

The latter analysis may require the ALJ to determine "the degree to which the [claimant's] statements can be believed and accepted as true." SSR 96-7p, at *4; *accord* 20 C.F.R. § 404.1529(c)(4); SSR 96-3p, at *2. The ALJ cannot reject the claimant's subjective description of her impairment "solely because the available objective medical evidence does not substantiate" that description. 20 C.F.R. § 404.1529(c)(2); *accord* SSR 96-3p, at *2. Rather, he must "consider all of the available evidence," 20 C.F.R. § 404.1529(c)(1), including the claimant's other statements, evidence of her daily activities, her treatment history, the objective medical evidence, and medical-source statements or medical opinions,[4] *see id.* § 404.1529(c)(4).

---

[3] Objective medical evidence means "anatomical, physiological, or psychological abnormalities" that can be observed and medically evaluated apart from the claimant's statements and "anatomical, physiological, or psychological phenomena [that] can be shown by the use of medically acceptable diagnostic techniques." 20 C.F.R. § 404.1528(b)–(c). "Symptoms" are the claimant's description of his or her impairment. *Id.* § 404.1528(a).

[4] Medical opinions are statements from "acceptable medical sources," such as physicians and psychologists, that reflect judgments about the nature and severity of the claimant's impairment, including her symptoms, diagnosis and prognosis, functional limitations, and remaining abilities. 20 C.F.R. § 404.1527(a)(2). The ALJ must explicitly weigh each available medical opinion in light of certain factors listed in the regulations. 20 C.F.R. § 404.1527(c), (e)(2). His "decision 'must be sufficiently specific to make clear to any subsequent reviewers the weight [he] gave' to

5

The ALJ also must give specific reasons "grounded in the evidence" for the weight assigned to a claimant's description of her impairment and related limitations. *Cooke v. Colvin*, No. 4:13cv18, 2014 WL 4567473, at *4 (W.D. Va. Sept. 12, 2014) (Kiser, J.) (citing SSR 96-7p, at *4).

An impairment is "not severe only if it is a slight abnormality which has such a minimal effect on the [claimant] that it would not be expected to interfere" with a person's ability to work. *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (internal quotation marks and emphasis omitted). This is not a difficult hurdle for the claimant to clear.[5] *Albright v. Comm'r of Soc. Sec.*, 174 F.3d 473, 474 n.1 (4th Cir. 1999); SSR 96-3p, at *2. Still, the court must affirm the ALJ's non-severity finding if it is consistent with the law and supported by substantial evidence in the record. *See Johnson*, 434 F.3d at 658; *Edmunds v. Colvin*, No. 4:12cv51, slip op. at 1–2, 8–10 (W.D. Va. July 29, 2013) (Crigler, M.J.), *adopted by* 2013 WL 4451224, at *1 (Aug. 16, 2013) (Kiser, J.).

B.    *Relevant Evidence*

McCain was diagnosed with scoliosis in 1983 at age 13. *See* R. 225. In 1992, McCain underwent surgery where Harrington rods were implanted to straighten and fuse her spine from T4 to L2.[6] *See* R. 225, 227. McCain's longtime primary-care physician, Stephen Morgan, M.D., R. 139, prescribed Neurontin and Lortab for chronic pain and muscle spasms in 2001 or 2002, R.

---

the opinion and 'the reasons for that weight.'" *Harder v. Comm'r of Soc. Sec.*, No. 6:12cv69, 2014 WL 534020, at *4 (W.D. Va. Feb. 10, 2014) (quoting SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)).

[5] Indeed, the ALJ must assume that the impairment or combination of impairments is severe and proceed to step three if, after "considering all of the evidence" in an adequately developed record, he cannot determine the impairment(s)'s functional affect on the claimant's physical or mental ability to perform basic work activities. SSR 96-3p, at *2.

[6] The thoracolumbar spine runs from the base of the neck to the top of the sacrum. *See Dorland's Illustrated Medical Dictionary* 1749 (31st ed. 2007). It consists of twelve thoracic vertebrae (T1–T12) and five lumbar vertebrae (L1–L5). The fifth lumbar vertebra (L5) sits on top of the sacrum (S1). *See id.*

6

215. On July 19, 2007, Dr. Morgan referred McCain to Christopher Shaffrey, M.D., at the University of Virginia's Neurosurgery Spine Clinic. R. 224–28. McCain rated her back and shoulder pain between seven and ten on a ten-point scale. R 225. On exam, Dr. Shaffrey observed that McCain had full motor strength throughout, negative straight-leg tests, and a normal tandem gait. *Id.* She also "ha[d] moderate paraspinal spasm from her shoulder down to her thoracolumbar junction" and experienced "tenderness" to palpation at L2. *Id.*

X-rays taken that day showed a "possible hook disengaged from the Harrington rod" at L2, as well as a 42-degree right scoliosis.[7] *Id.* Dr. Shaffrey opined that McCain's Harrington rods were causing her bilateral inferior scapular pain and mid-back pain because the hardware was "disrupting" or "irritating" the vertebrae and surrounding muscles. R. 225–26. He advised McCain that "any surgical intervention" would only make her pain worse. R. 226. McCain wanted to undergo additional diagnostic studies because the chronic pain had "significantly diminished" her quality of life. *Id.*

McCain returned to Dr. Shaffrey's clinic on October 8, 2007. R. 222–23. She rated her back and shoulder pain between eight and ten on a ten-point scale. R. 222. On exam, Dr. Shaffrey again observed that McCain had full motor strength throughout, negative straight-leg tests, and a normal tandem gait, but experienced "tenderness" to palpation at L2-L3. *See* R. 222–23. A full-spine CT myelogam showed a "solid" fusion "with mild residual . . . scoliosis" from T4 to L2 and DDD with a "minimal" bulging disc and "mild" left foraminal stenosis at L5-S1. R. 223, 227–28. Dr. Shaffrey "did not see any evidence of a [Harrington rod] nonunion except for the very prominent right hook[s] at T4 and L2." *Id.* He again opined that surgery would be "very

---

[7] A few days later, Michael Kok, M.D., opined that the X-rays showed a 20-degree scoliosis with the "Harrington rods in place [and] no evident failure or signs of fatigue." R. 232.

7

difficult" and "yield unpredictable results" in reducing McCain's pain. *Id.* Dr. Shaffrey instructed McCain to continue her Neurontin and Lortab and to return as needed. *See id.*

McCain alleges that she stopped working as a waitress in June or July 2008 because she "pulled one of [her] Harrington rods" while lifting trays and she could feel the "screw protrud[ing] out and rub[bing] against [her] back." R. 44. McCain regularly saw Dr. Morgan for routine exams and prescription refills between June 2008 and June 2011. *See generally* R. 240–45 (June 18, 2008); R. 246–49 (July 1, 2008); R. 250–55 (Dec. 23, 2008); R. 256–61 (Mar. 24, 2009); R. 262–71 (Aug. 11, 2009); R. 272–74 (Dec. 29, 2009); R. 275–78 (Apr. 27, 2010); R. 279–82 (July 27, 2010); R. 318–26 (Sept. 9, 2010); R. 315–17 (Jan. 6, 2011); R. 312–14 (Mar. 29, 2011); R. 296–99 (June 30, 2011). Dr. Morgan's treatment notes mostly list the medications that he prescribed during this time to treat McCain's chronic musculoskeletal pain (Neurontin, Lortab, Ultram, Baclofen) and depressive disorder (Wellbutrin, Xanax, Remeron). *See, e.g.*, R. 241, 247, 251–52.

On June 18, 2008, McCain told Dr. Morgan that she was "doing well," but "had to quit her job" and was experiencing "increased" pain and "some increased" stress. R. 240. Dr. Morgan noted that they would monitor McCain's shoulder pain and depression. *Id.* He did not document any musculoskeletal or psychological findings during this visit or during McCain's next visit on July 1, 2008. R. 240, 246. On December 23, 2008, McCain reported that she "ha[d] increased pain with walking" and was "not able to walk much." R. 250. Dr. Morgan opined that McCain's "current medical regimen [was] effective," but noted that McCain planned to seek a second specialist's opinion about her back pain. *Id.* He did not note any abnormal musculoskeletal findings on exam. *See id.*

8

In April 2010, Dr. Morgan noted that McCain "had multiple workups for [her] back pain, including neurosurgery at UVA," and that "chronic pain medications [were] her best option at this time." R. 275. McCain complained of a Harrington rod screw causing "some pain" on September 9, 2010. R. 318. Dr. Morgan noted that UVA neurosurgery needed to evaluate this issue, but he did not document any musculoskeletal findings on a physical exam. R. 318, 320, 321. The one subsequent treatment note that mentions McCain's back pain simply documents her own report that her pain was "unchanged" on Neurontin, Lortab, and Ultram. R. 315–16 (Jan. 2011); *see also* R. 312–14, 296–99 (Mar. & June 2011). A physical exam that day was normal. R. 315. In March 2011, Dr. Morgan noted without explanation that McCain should "continue to limit her lifting." R. 312.

McCain completed a Pain Questionnaire and Adult Function Report in late fall 2010. R. 142–43, 168–75. She reported experiencing constant "aching, stabbing, burning, throbbing, sticking," pain in her back, shoulders, arms, and knees. R. 142. The "most severe" pain was in her "shoulders and the part of [her] back where [she] pulled the screw" from her Harrington rod. *Id.* She explained that the pain had limited her physical activities since 1993, especially those involving lifting, bending, and turning her body. R. 143. The combination of Ultram, Neurontin, and Lortab "ease[d] the pain." *Id.*

On a typical day, McCain woke up, got dressed, watched her 11-year-old step-son board the school bus, rested for an hour, used the computer for 30 to 60 minutes at a time, made simple meals, and went grocery shopping "as needed." *See* R. 168, 170, 171, 172. It took her "all day" to clean her house because she "moved slowly" and had to take several breaks. R. 170. McCain's husband did the yard work, and her step-son helped mop, sweep, clean the kitchen, and do laundry. R. 170–71. McCain reported that back pain affected her ability to sit, stand, walk, lift,

9

bend, and climb stairs. R. 173. She said that she was "suppose[d] to not lift over 5 lbs." and that bending moved the screw in her back. *Id.* McCain reported that a cane had been prescribed in 2006, and that she used it to help her walk "as needed." R. 174. McCain also reported that she "d[id] not like" changes in her routine and took anti-anxiety medications for her nerves. *Id.* She did not attribute any particular functional limitations to her mental condition. *See* R. 173–74.

State-agency medical consultants David Williams, M.D., and Stephen Saxby, Ph.D., reviewed McCain's application in late fall 2010. *See* R. 64–70. Dr. Williams opined that McCain's "discogenic and degenerative" back disorder was a severe impairment, but that the record did not contain sufficient evidence to determine whether the impairment was disabling on or before McCain's DLI. *See* R. 66–67, 70. Dr. Saxby reached the same conclusion about McCain's severe affective disorder. *See* R. 67–68, 70. State-agency medical consultants Paula Nuckols, M.D., and Patricia Bruner, Ph.D., reconsidered McCain's application on February 14, 2011. *See* R. 71–76. Each agreed with her colleague's earlier opinions that the record contained insufficient evidence to determine whether McCain's severe back disorder and severe affective disorder were disabling. *See* R. 73–76.

In February 2012, McCain testified that she was in too much pain to work after she "pulled one of [her] Harrington rod[]" screws, which "protrudes out and rubs against [her] back." R. 44. She explained that her doctors recommended pain management over surgery because repairing or replacing the fused hardware would be too difficult. *See* R. 45–46. She also claimed that Dr. Morgan advised her to be careful lifting more than five pounds and bending her body so as to avoid aggravating the fusion. *See* R. 46. McCain testified that she was able to care for herself but her step-son still helped with household chores. *See* R. 47–48.

*C.*     *The ALJ's Findings*

The ALJ concluded at step two that McCain was not disabled between July 10 and December 31, 2008, because her medically determinable impairments—DDD and depression—were not severe impairments. R. 22. He agreed with the state-agency consultants' opinions "to the extent that there is insufficient evidence to establish that [McCain's] medically determinable impairments [had] more than a minimal effect on her ability to carry out basic[] work-related activities" before her DLI. R. 25. The ALJ also "took note of" Drs. Saxby and Bruner's "opinions . . . that, while [McCain] has a severe impairment of depression, [she] submitted insufficient evidence to substantiate her claim" that the impairment was disabling. R. 26.

The ALJ found that McCain's DDD and depression "could have reasonably been expected to produce [her] alleged symptoms," but that her statements describing the intensity, persistence, and limiting effects of those symptoms were "not credible to the extent they [were] inconsistent with [a] finding that the claimant ha[d] no severe impairment or combination of impairments" on or before her DLI. R. 24. The ALJ rejected McCain's allegation that "constant back and shoulder pain . . . limited her physical activities and ability to work" because her treatment "was minimal, conservative, and app[arently] effective" and she "exhibited normal objective findings" on physical exams in July and December 2008. R. 25. He found no evidence that McCain had been prescribed a cane to help her walk. *Id.* The ALJ also found that Drs. Williams and Nuckols's opinions "supported" his conclusion that McCain did not have a severe "physical impairment or combination of physical impairments" on or before her DLI. *Id.*

11

The ALJ also evaluated McCain's depression using the "special technique" set out in the regulations.[8] R. 26; 20 C.F.R. § 1520a(a). He found that McCain experienced no limitations in her daily activities or social functioning; mild limitations maintaining concentration, persistence, or pace; and no episodes of decompensation. R. 26. In support, the ALJ cited McCain's statements attributing her functional limitations to her physical pain, her conservative and effective mental health treatment, and the lack of documented psychological signs or symptoms in Dr. Morgan's treatment notes. *See id.* The ALJ gave the same reasons for rejecting McCain's allegation that her depression significantly affected her ability to perform basic work activities on or before her DLI. *See* R. 25.

D.    Analysis

The ALJ made three legal errors in McCain's case. First, he did not explain why he implicitly rejected all four state-agency consultants' opinions that McCain's back disorder and depression were severe impairments before December 31, 2008. *See* R. 25–26, 67, 74. Although the ALJ was not bound by those findings, 20 C.F.R. § 404.1527(e)(2), it was not enough for him to say that he "considered" or "took note of . . . the opinions," R. 25–26, without explaining the weight he gave them and the reasons for that weight. *See* 20 C.F.R. § 404.1527(c), (e)(2); *Radford v. Colvin*, 734 F.3d 288, 295–96 (4th Cir. 2013) ("Even if the ALJ's exclusive citation to [the state medical] opinions indicates the (apparently very high) evidentiary weight he placed on them, it does not indicate *why* the opinions merit that weight."); *Frazier v. Astrue*, No. 7:07cv437, 2008 WL 2669452, at *3 (W.D. Va. July 3, 2008) ("In curtly rejecting these

---

[8] Once the ALJ finds that the claimant has a "medically determinable mental impairment," he must rate the claimant's "degree of functional limitation" in four areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). "Non-severe" mental impairments generally cause no more than "mild limitations" in the first three areas and no episodes of decompensation. *Id.* § 404.1520a(d)(1).

12

limitations, the ALJ seemingly disregarded the regulations' mandate that [he] explain the weight given to the opinion of a state agency medical consultant.").

Second, the ALJ did not consider all of the evidence in McCain's case record, 20 C.F.R. § 404.1520(a)(3), which includes medical exhibits predating her alleged onset date and postdating her DLI. In the Fourth Circuit, evidence produced outside of this timeframe is "not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI." *Bird*, 699 F.3d at 340. The ALJ must always consider the whole record and sufficiently explain the weight he gave to "obviously probative exhibits" therein. *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977); *see also Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

Finally, the ALJ appears to have concluded that McCain's DDD and depression were non-severe impairments before evaluating her credibility:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have reasonably been expected to produce the alleged symptoms; however the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the finding that the claimant has no severe impairment or combination of impairments for the reasons explained below.

R. 24. This "vague and circular" boilerplate statement "'gets things backwards' by implying" that McCain's functional limitations—or lack thereof—were "'determined first and . . . then used to determine [her] credibility.'"[9] *Mascio v. Colvin*, 780 F.3d 632, 639, 640 (4th Cir. 2015) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)). The ALJ should have compared

---

[9] The Fourth Circuit recently rejected a similar boilerplate statement that ALJs often use to explain their credibility findings when assessing the claimant's residual functional capacity between steps three and four. *Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015). The ALJ's reliance on this statement is harmless error if he properly analyzes the claimant's credibility elsewhere in his written decision. *Id.*

13

McCain's alleged symptom-related limitations to other relevant evidence in her record, not to his conclusion that McCain's impairments were non-severe. 20 C.F.R. § 404.1529(c)(4); *see Mascio*, 780 F.3d at 639 ("[T]he ALJ here should have compared Mascio's alleged functional limitations from pain to the other evidence in the record, not to [her] residual functional capacity."). His error in assessing McCain's credibility is particularly glaring in a case such as this one where a claimant's reported pain plays a significant role in her alleged functional limitations. *See* SSR 96-3p, at *2 ("If the [ALJ] finds that such symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to do basic work activities, the [ALJ] must find that the impairment(s) is severe and proceed to [step three] even if the objective medical evidence would not in itself establish that the impairment(s) is severe.").

Courts review legal errors in social security cases to determine whether they could have changed the Commissioner's final decision that the claimant is not disabled. *Reid*, 769 F.3d at 865. Errors resulting in a denial of benefits at step two may be harmless where an adequately developed record "overwhelmingly support[s]" the Commissioner's decision even though the ALJ's written determination "failed to marshal that support." *Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (quoting *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)); *cf. Edmunds*, 2013 WL 4451224, at *6 (explaining that the claimant bears the burden of proof at step two and recommending that the court affirm a denial of benefits where the ALJ considered all the relevant evidence in a "limited," but adequately developed record).

The record overwhelmingly supports the ALJ's conclusion that McCain did not have a severe mental impairment on or before December 31, 2008. In October 2010, McCain reported that her "condition" affected her memory, concentration, interpersonal skills, and ability to complete tasks. R. 173. When asked to explain her specific limitations, McCain wrote that she

"ha[d] a terrible memory," did not follow instructions "very well," did not know how long she could pay attention, "d[id] not like" changes in her routine, was on medication for her nerves, and experienced "mood swings" related to her physical pain and medications. *Id.* But she also reported that she performed household chores, studied for online college courses, "never had any problems with authority figures," and could slowly finish what she started. R. 168, 174. McCain attributed her slow pace and need to take frequent breaks to her back pain, not to her depression or anxiety. *See* R. 170, 173.

The ALJ found that McCain had no mental limitations performing activities of daily living or interacting appropriately with others and "mild" limitations maintaining concentration, persistence, or pace. R. 26. He based these findings on McCain's self-reported activities and mental abilities, as well as Dr. Morgan's treatment notes, which "d[id] not list any objective signs stemming from [McCain's] depression." *Id.* The ALJ also found that McCain's mental health "treatment appear[ed] to be effective, conservative, and minimal" because she only saw her primary-care provider for occasional medication refills. R. 25. These were legitimate reasons for the ALJ to find that McCain's depression was not as severe as alleged, 20 C.F.R. § 404.1529(c)(4), and they are fully supported by relevant evidence in the record.[10] *See* R. 250 (Dr. Morgan's opinion that McCain's "current medical regimen is effective" and instruction to continue Xanax, Remeron, and Wellbutrin); R. 240, 246, 256, 258, 264 (no psychological signs); R. 256, 264, 272, 275, 279 (McCain's reports that her depression and anxiety were "stable" on current medications); R. 168, 174 (McCain's daily activities).

---

[10] These are also legitimate reasons for the ALJ to have rejected Drs. Saxby and Bremer's conclusory opinions that McCain's affective disorder qualified as a "severe" impairment on or before her DLI. *See* 20 C.F.R. § 404.1527(c)(3), (4), (6). Thus, the ALJ's failure to properly weigh those opinions, while legal error, is not a reason to reverse the Commissioner's decision and remand the case for further consideration. *See Bishop*, 583 F. App'x at 67.

15

The ALJ's finding that McCain did not have a severe physical impairment or combination of physical impairments on or before December 31, 2008, presents a much closer question. *See Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) (per curiam) ("Step two of the sequential evaluation is a threshold question with a de minimus severity requirement."); *Taylor v. Astrue*, Civ. Action No. BPG-11-32, 2012 WL 294532, at *8 (D. Md. Jan. 31, 2012) (noting that step two's severity requirement is a "screening device used to dispose of groundless claims"). McCain claims that she was physically limited by an old spinal fusion that caused chronic, severe back and shoulder pain and that this pain forced her to stop working in June or July 2008. R. 44. The ALJ acknowledged McCain's allegation, but he did not mention several medical exhibits that tended to support it. *See* R. 23–25.

In October 2007, for example, Dr. Shaffrey explained that "very prominent" Harrington rod hooks at T4 and L2 were disrupting the vertebrae and surrounding muscles causing McCain's reportedly severe back and shoulder pain. R. 223. In April 2010, Dr. Morgan noted that McCain "had multiple workups for [her] back pain, including neurosurgery at UVA," and opined that "chronic pain medications [were] her best option at this time." R. 275. The ALJ should have explicitly considered all the relevant evidence in the record, even if it was produced outside of the relevant timeframe. *See Bird*, 699 F.3d at 340; *Green v. Colvin*, --- F. Supp. 3d ---, 2014 WL 5149141, at *5 (W.D. Va. Oct. 14, 2014) ("It is well settled that evidence developed after termination of insured status may be relevant to prove disability arising before the date last insured."); *Treadwell v. Colvin*, No. 5:13cv370-FL, 2014 WL 4656852, at *10 (E.D.N.C. Aug. 25, 2014) ("Where evidence predating the onset of disability is relevant to an issue in the case, the ALJ should consider that evidence in making a determination on the issue."); 20 C.F.R. § 404.1520(a)(3).

One potential hurdle for McCain is that these unexamined exhibits contain no medical-source information about the intensity, persistence, or limiting effects of her spinal fusion and residual pain on or before December 31, 2008. *See Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir. 2001) (collecting cases where the Sixth Circuit upheld an ALJ's non-severity finding because the claimant's record lacked such evidence). They also tend to support the ALJ's stated reasons for rejecting McCain's allegation that her back and shoulder pain significantly limited her ability to perform basic work activities like standing, walking, and lifting. This Court must defer to the ALJ's credibility determination except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. *Bishop*, 583 F. App'x at 68 (citing *Edelco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997)); *see also Mascio*, 780 F.3d at 640 (finding the ALJ's "vague and circular" credibility determination required remand).

The ALJ correctly found that physical exams in July and December 2008 did not reveal any objective musculoskeletal abnormalities. R. 25, 246, 250. Dr. Morgan's other treatment notes sometimes document McCain's complaints of pain, but they do not document any abnormal objective findings on physical exams. *See, e.g.*, R. 240, 256, 264, 272, 275, 279, 318, 320. Dr. Shaffrey's physical exams also revealed that McCain had full strength, negative straight-leg tests, and a normal gait in July and October 2007. R. 222–23, 225. Imaging studies conducted at the same time showed "mild" DDD at L5-S1, R. 227–28, and no evidence that McCain's Harrington rods from T4 through L2 were failing, fatigued, or disconnected, R. 223, 232. Neither Dr. Morgan's nor Dr. Shaffrey's treatment notes contain any indication that a physician limited McCain's physical activities on or before her DLI. *See* 20 C.F.R. § 404.1529(c)(4).

The ALJ was not required to accept McCain's subjective statements "to the extent they [were] inconsistent with the available evidence, including objective evidence of [her] underlying impairment, and the extent to which that impairment [could] reasonably be expected to cause the pain" McCain allegedly suffered during the relevant time. *Craig*, 76 F.3d at 595; *accord* 20 C.F.R. § 404.1529(c)(4). But he also was not permitted to reject McCain's statements for this reason alone. SSR 96-3p, at *2; 20 C.F.R. § 404.1529(c)(2). Having "show[n] by objective medical evidence a condition reasonably likely to cause the pain claimed, [McCain] was entitled to rely exclusively on subjective evidence to prove . . . that [her] pain [was] so continuous and/or severe," *Hines*, 453 F.3d at 565, that it had more than a minimal effect on her ability to perform basic work activities. *See* SSR 96-3p, at *2; 20 C.F.R. § 404.1529(c)(4).

The ALJ also found that McCain's "minimal, conservative treatment for her DDD weigh[ed] . . . against [her] allegations of severity." R. 25. "An unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition" can weigh against the claimant's credibility. *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994); *see also Edmunds*, 2013 WL 4451224, at *4 (stating that evidence that symptoms are controlled with appropriate treatment can support the ALJ's finding that the underlying impairment is non-severe) (citing *Hamilton v. Shalala*, 43 F.3d 1466, at *3 (4th Cir. 1994) (unpublished disposition)). The ALJ correctly found that McCain received most of her treatment from Dr. Morgan, her primary-care provider. R. 25. But he did not acknowledge that in 2007 Dr. Morgan referred McCain to a neurosurgeon because chronic pain "significantly diminished" her quality of life. R. 226. Dr. Shaffrey twice attributed McCain's back and shoulder pain to Harrington rods that were "disrupting" the vertebrae and muscles from T4 through L2—not to McCain's mild L5-S1 DDD. *See* R. 225–26, 227–28. Dr. Shaffrey also

18

opined that the hardware's "solid fusion" would make surgery "very difficult" and "yield unpredictable results" in reducing McCain's back and shoulder pain. *Id.*

McCain later reported that her "most severe" chronic pain was in her "shoulders and the part of [her] back" that had been fused with Harrington rods—not in the lower part of her back where she had DDD. R. 142, 223. The ALJ's failure to mention McCain's treatment with Dr. Shaffrey and the neurosurgeon's opinions undermines the ALJ's finding that McCain's "minimal and conservative treatment for her DDD" was inconsistent with her allegation that "constant back and shoulder pain . . . limited her physical activities and ability to work," R. 25. *See* 20 C.F.R. §§ 404.1527(b), 404.1529(c)(4); *Hines*, 453 F.3d at 566 (noting that the ALJ cannot "select and discuss only th[e] evidence that favors his ultimate conclusion").

Finally, the ALJ suggested that McCain made inconsistent or contradictory statements describing the intensity, persistence, and limiting effects of her back and shoulder pain, which could legitimately undermine her credibility. *See* R. 24–25; 20 C.F.R. § 404.1529(c)(4); SSR 96-7p, at *5. For example, the ALJ apparently rejected McCain's allegation that severe, "constant back and shoulder pain . . . limited her physical activities," R. 25, in part because she told Dr. Morgan in July 2008 that her back pain was "stable," R. 25, 246. But the ALJ did not explain how "the record, when read as a whole, reveals [any] inconsistency between the two" statements. *Hines*, 453 F.3d at 565. In July and October 2007, McCain rated the intensity of her chronic back and shoulder pain between seven and ten on a ten-point scale. *See* R. 225–26, 227–28. In June, July, and December 2008, McCain told Dr. Morgan that her "pain [was] increased," R. 240, "stable" on narcotic medications and muscle relaxants, R. 246, and "increased . . . with walking," R. 250. The ALJ must adequately explain why McCain's isolated comment that her pain was "stable" casts doubt on her allegation that her pain was also "so continuous and/or severe,"

19

*Hines*, 453 F.3d at 565, that it had more than a minimal effect on her physical ability to perform basic work activities during the relevant period.

The ALJ's apparent rationale for rejecting McCain's testimony describing her pain omits contradictory factual findings made elsewhere in his decision. *See Edelco*, 132 F.3d at 1011. In summarizing McCain's treatment history, the ALJ found that in December 2008 McCain told Dr. Morgan that "she could not walk as much, due to increased pain." R. 24; *see also* R. 250 ("She is not able to walk much. She has increased pain with walking."). But the ALJ did not cite McCain's explanation that walking was painful in concluding that her back pain was not as severe or physically limiting as she alleged. R. 25. On the contrary, the ALJ found that "even though [McCain's] subjective complaints from her December exam show that she could not walk much, there is no indication that this [activity] was limited to a physical problem or some other problem." *Id.*

Similarly, the ALJ accurately noted that Drs. Williams and Nuckols opined that McCain's back disorder was a severe impairment, but that the record did not contain sufficient evidence to determine whether the impairment was disabling on or before her DLI. *Id.* In the next paragraph, however, the ALJ explained that the same opinions "supported" his conclusion that McCain did not have a severe "physical impairment or combination of physical impairments" on or before her DLI.

The ALJ's vague, circular, and internally inconsistent credibility determination requires remand. *Cf. Mascio*, 780 F.3d at 640 ("Nowhere . . . does the ALJ explain how he decided which of Mascio's statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering Mascio's [RFC]. The ALJ's lack of explanation requires remand.").

## IV. Conclusion

The Commissioner erred in finding that McCain did not have a severe physical impairment or combination of physical impairments on or before December 31, 2008. Despite the absence of medical opinion evidence specifically detailing McCain's functional abilities and limitations, I cannot find that the record overwhelmingly supports the Commissioner's final decision so as to render her error at step two harmless. It is the Commissioner's prerogative to assess the functional capabilities of a claimant to determine whether he or she can perform past work or other jobs, and I leave it to the Commissioner to make that assessment in the first instance on remand. Accordingly, I recommend that the Court **GRANT** McCain's motion for summary judgment, ECF No. 14, **DENY** the Commissioner's motion for summary judgment, ECF No. 18, **REVERSE** the Commissioner's final decision, and **REMAND** this case for further proceedings under the fourth sentence of 42 U.S.C. § 405(g).

### <u>Notice to Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to the *pro se* Plaintiff at her address of record and to all counsel of record.

ENTER: April 30, 2015

Joel C. Hoppe
United States Magistrate Judge